RECEIVED
JUL 15 2011
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DECISION

| | | |
|---|---|---|
| CHESAPEAKE LOUISIANA, L.P. | * | 5:10-CV-00374 |
| VERSUS | * | JUDGE DONALD E. WALTER |
| HTP AND ASSOCIATES, LLC, ET AL | * | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This case concerns David Whitaker and transactions he entered into regarding a sixty acre tract of land in De Soto Parish, Louisiana. David Whitaker married Dessie Whitaker in 1955, and they remained married until her death in 2005. On February 12, 1992, a signed, notarized credit sale deed was filed in the De Soto Parish conveyance records. [Plaintiff's Exhibit ("PE") 1]. The credit sale deed transferred sixty acres of land in Section 23, Township 12 North, Range 14 West of De Soto Parish ("the subject property") from Gladys O. Anderson, wife of Oliver A. Anderson, to David Whitaker, a single man. [Id.]. On April 14, 2005, David Whitaker, as a single man, granted a mineral lease on the subject property to Mobley Valve Service ("Mobley"). [PE 2].

On September 19, 2005, Dessie Whitaker died intestate. [PE 9]. On January 2, 2008, a signed Judgment of Possession as to Dessie Whitaker's estate was filed in the First Judicial District Court in Caddo Parish. [PE 11]. The Judgment of Possession listed Dessie Whitaker's community property as immovable property in Section 4, Township 12, Range 14, as well as miscellaneous household furnishings and personal effects. [Id.]. The subject property was not listed as part of Dessie Whitaker's estate. [Id.]. The Judgment of Possession was filed in the De Soto Parish conveyance records on January 9, 2008. [Defendant's Exhibit ("DE") 106].

On March 31, 2008, David Whitaker granted a mineral lease on the subject property to Land

Endeavors, LLC ("Land Endeavors"). [PE 12]. The Whitaker-Land Endeavors lease was recorded in De Soto Parish on April 2, 2008. [Id.]. That same day, Land Endeavors assigned fifty percent of its interest in the lease of the subject property to Evergreen Timber Corporation ("Evergreen"). [PE 15]. The Land Endeavors to Evergreen assignment was recorded in De Soto Parish on April 2, 2008. [Id.]. On August 8, 2008, Land Endeavors and Evergreen assigned their interests in the mineral lease on the subject property to Chesapeake Louisiana, L.P. ("Chesapeake"). [PE 16]. That assignment was not recorded in the De Soto Parish records until December 1, 2008. [Id.].

On September 17, 2008, an Amended Judgment of Possession on Dessie Whitaker's estate was filed in the First Judicial District Court in Caddo Parish. [PE 18]. The Amended Judgment of Possession listed the subject property as part of Dessie Whitaker's estate. [Id.]. The Amended Judgment of Possession, however, was never filed in De Soto Parish. [Asprodites 3:104]. On December 31, 2009, the heirs of Dessie Whitaker entered a mineral lease on the subject property with HTP and Associates, LLC ("HTP"). [PE 23]. That document was recorded in De Soto Parish on January 19, 2010. [Id.].

On July 9, 2009, David Whitaker filed a petition for declaratory judgment in the 42nd Judicial District Court in De Soto Parish seeking to have the Land Endeavors lease declared null and void. [PE 32]. That case was removed to the United States District Court for the Western District of Louisiana on November 20, 2009. [PE 34]. On November 18, 2010, the parties filed a joint motion to dismiss the case due to settlement, and a judgment so ordering was signed on November 22, 2010. [PE 42, 43]. On November 11, 2010, David Whitaker and Chesapeake signed a settlement agreement in which Whitaker agreed to ratify, confirm, and adopt the lease with Land Endeavors that had been transferred to Chesapeake. [PE 44]. On November 18, 2010, the settlement agreement was filed in the De Soto Parish conveyance records. [Id.].

As a result of correspondence between HTP and Chesapeake regarding the leases on the subject property, [see PE 26-28], Chesapeake filed a complaint for declaratory judgment against HTP and the Whitaker heirs with this Court on March 5, 2010. [Doc. # 1]. In its original complaint, Chesapeake sought declaratory relief that the 2008 Land Endeavors lease, to which Chesapeake is successor-in-interest, is in full force and effect, a permanent injunction preventing HTP from interfering with Chesapeake's lease on the subject property, and attorneys fees. [Id. at ¶¶ 22-25]. In their answer to the complaint, HTP and the Whitaker heirs raised a counterclaim for declaratory judgment that the lease between them concerning the subject property be given full force and effect while the 2008 Land Endeavors lease be declared null and void. [Doc. #16 at ¶ 29]. On January 20, 2010, the Court permitted Chesapeake to amend its complaint to add a claim for fraud against HTP and the Whitaker heirs. [Doc. #42 at ¶ 27]. A bench trial in this matter was held in Shreveport, Louisiana, on April 18-20, 2011. Upon consideration of the evidence and testimony, this Court's findings of fact and conclusions of law are as follows:

**1 – Louisiana Revised Statute 35:11 provides the legal foundation for Chesapeake's claim for declaratory judgment.**

This case presents a situation where the facts appear to invoke both a Louisiana Revised Statute and an article of the Louisiana Civil Code, with the two provisions offering divergent solutions. The concern lies in David Whitaker representing that he owned the subject property as a single man when in fact he was married at the time of acquisition. Louisiana is a community property state. La. Civ. Code Art. 2334. Therefore, any property purchased during marriage is presumed to be community property. La. Civ. Code. Art. 2340. David Whitaker testified that he married Dessie Whitaker in 1955 and remained married to her until her death in 2005. Accordingly, since David

Whitaker was married when he purchased the subject property in 1992, it would be presumed community property. The Amended Judgement of Possession of Dessie Whitaker's estate reflects her community interest in the subject property. [PE 18]. Article 2347 of the Louisiana Civil Code states that the concurrence of both spouses is required to lease community property. David Whitaker never received Dessie Whitaker's concurrence when leasing the minerals on the subject property to Mobley or Land Endeavors. Consequently, this litigation focuses on the extent third parties could rely on David Whitaker's representations that he owned and leased the property as a single man, suggesting no spousal concurrence was necessary.

Chesapeake argues that it should be able to rely on David Whitaker's representations that he was a single man. To support this position, Chesapeake points to Louisiana Revised Statute 35:11, which reads:

> A. Whenever notaries pass any acts they shall give the marital status of all parties to the act, viz: If either or any party or parties are men, they shall be described as single, married, or widower. If married or widower the christian and family name of wife shall be given. If either or any party or parties are women, they shall be described as single, married or widow. If married or widow, their christian and family name shall be given, adding that she is the wife of or widow of . . . the husband's name.
>
> B. *A declaration as to one's marital status in an acquisition of immovable property by the person acquiring the property creates a presumption that the marital status as declared in the act of acquisition is correct* and, except as provided in Subsection C of this Section, any subsequent alienation, encumbrance, or lease of the immovable by onerous title shall not be attacked on the ground that the marital status was not as stated in the declaration.
>
> C. Any person may file an action to attack the subsequent alienation, encumbrance, or lease on the ground that the marital status of the party as stated in the initial act of acquisition is false and incorrect; however, *such action to attack the alienation, encumbrance, or lease*

> *shall not affect any right or rights acquired by a third person acting in good faith.*
>
> D. The presumption provided in Subsection B of this Section is hereby declared to be remedial and made retroactive to any alienation, encumbrance, or lease made prior to September 1, 1987. Any person who has a right as provided in Subsection C of this Section, which right has not prescribed or otherwise been extinguished or barred upon September 1, 1987 and who is adversely affected by the provisions of Subsection C of this Section shall have six months from September 1, 1987 to initiate an action to attack the transaction or otherwise be forever barred from exercising his right or cause of action.

(emphasis added). Citing the Civil Code, HTP and the Whitaker heirs contend that there can be no presumption as to David Whitaker's marital status based on his representations alone. In particular, Louisiana Civil Code Article 3341 reads:

> The recordation of an instrument:
> (1) Does not create a presumption that the instrument is valid or genuine.
> *(2) Does not create a presumption as to the capacity or status of the parties.*
> (3) Has no effect unless the law expressly provides for its recordation.
> (4) Is effective only with respect to immovables located in the parish where the instrument is recorded.

(emphasis added).

Louisiana Revised Statute 35:11 creates a presumption that a declaration of marital status in a notarized acquisition of an immovable is valid. Accordingly, R.S. 35:11 presumes the validity of David Whitaker's declaration that he was a single man in the credit sale deed with which he acquired the subject property. Article 3341 only states that recordation of an instrument does not create a presumption as to the capacity or status of the parties. Therefore, the recordation of the credit sale deed did not create a presumption of the validity of David Whitaker's declaration that he was a

single man. Article 3341, however, is silent with respect to the presumption created by R.S. 35:11. Both pieces of legislation speak only to the creation of presumptions of validity. Importantly, Article 3341 does not negate the presumption created by R.S. 35:11. While Article 3341 may not create a presumption of validity based on recordation of the credit sale deed in the De Soto Parish conveyance records, it does not vitiate the presumption created by R.S. 35:11 upon the notarization of the credit sale deed. The presumption created by R.S. 35:11 applies in this case. So long as Land Endeavors and Chesapeake acquired the lease of the subject property in good faith then HTP and the Whitaker heirs cannot attack that lease based on the misstated marital status of David Whitaker.

**2 – Land Endeavors and Chesapeake acquired the 2008 lease from David Whitaker in good faith.**

La. R.S. 35:11 does not define good faith as the term is used in subsection (c) of the statute. Unfortunately, no Louisiana court has approached the issue of what the phrase means in this context. Therefore, this court must ascertain what Louisiana law on the issue entails. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967) ("the state's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the state. In this respect, [this court] may be said to be, in effect, sitting as state court.").

All parties in this case suggest the rules of good faith in the context of acquisitive prescription provide a useful analogue for determining the meaning of the term as used in R.S. 35:11. Civil Code Article 3480 provides that "[f]or purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses." Article 3481 further notes that "[g]ood faith is presumed. Neither error of fact nor error

of law defeats this presumption. This presumption is rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possesses."

Chesapeake asserts that a subjective standard of good faith based on a third party's actual knowledge of a marital status should govern the determination of good faith under R.S. 35:11. HTP, on the other hand, suggests a broad objective standard that confers constructive knowledge of all public records on the third party. In *Phillips v. Parker*, 483 So.2d 972 (La. 1986), the Louisiana Supreme Court established a standard that falls somewhere in between the parties' propositions. The Court in *Phillips* expressly rejected the theory that good faith includes constructive knowledge of all public records: "The theory of constructive knowledge should also have no bearing on the determination from an objective standpoint of the good faith of a possessor of immovable property for acquisitive prescription purposes." *Id.* at 977. Rather, the Louisiana Supreme Court adopted a standard as follows: "The better approach, and the one we conclude is required..., is that the good faith of the possessor should be determined by a consideration of all relevant factors of the particular case relevant to the definition of good faith in the Civil Code, and not merely by any reference to the public records doctrine or to any theory of constructive knowledge." *Id.* Based on the Louisiana Supreme Court's pronouncement in *Phillips*, this Court concludes the applicable standard for good faith in this case is twofold: (1) good faith is presumed, and the burden of rebutting that presumption falls upon HTP and the Whitaker heirs; and (2) the presumption of good faith can be rebutted only by showing that under objective considerations of this particular case Chesapeake was not in good faith when it acquired the 2008 lease on the subject property. In the end, this creates a totality-of-the-circumstances test.

In this case there are several objective considerations that must be taken into account. First,

did Chesapeake check the public records or obtain a title examination?[1] Second, would a reasonable search of the conveyance records related to the subject property inform Chesapeake that the marital status as declared may be incorrect?[2] Third, should the circumstances surrounding the acquisition of the lease have suggested to Chesapeake that there may be a defect in David Whitaker's alleged title to the property?[3] Finally, did Chesapeake have actual knowledge that David Whitaker did not own the subject property as a single man?[4]

First, both Land Endeavors and Chesapeake either personally searched the title or hired an outside firm to do it. Jay Rossi testified that he personally ran the search for Land Endeavors, and Denise Cramer testified that Chesapeake employed J.W. Porter & Associates to run title. Additionally, Chesapeake received a verbal title opinion from attorney Bill Strain. Nothing in the first consideration weakens the presumption that Land Endeavors and Chesapeake were in good faith.

Second, the chain of title between David Whitaker's acquisition of the property in 1992 and the mineral lease to HTP in 2009 is devoid of any clear statement controverting the presumption that David Whitaker owned the property as a single man. Jay Rossi of Land Endeavors provided a step-by-

---

[1] "Of course, the obtaining of title examination and knowledge actually obtained from the examination may be factors to be considered in the determination of good faith." *Phillips*, 483 So.2d at 977.

[2] "This presumption is rebutted on proof that the possessor knows, or *should know*, that he is not the owner of the thing he possesses." La. C. C. Art. 3481 (emphasis added).

[3] "However, knowledge by a purchaser of title defects can be inferred from circumstances more relevant than the mere obtaining of a title examination. For example, a purchase by quit claim deed or at an extremely low price may be suggestive (but not conclusive) of knowledge of title defects which may rebut the presumed good faith of the purchaser." *Phillips*, 483 So.2d at 978.

[4] "Actual knowledge of a title defect at the time of purchase certainly precludes good faith." *Id.*

step account of searching the records on the subject property. After reviewing a plat from the tax assessor's office to confirm the acreage and name of ownership, which showed David Whitaker's name only, Rossi ran a vendee search in which he found the 1992 credit sale deed by which David Whitaker purchased the subject property. He then proceeded to run David Whitaker's name forward through a vendor search to determine whether David Whitaker had conveyed any interest in the subject property. As a result of this search, he found the Mobley lease. Both the credit sale deed and the Mobley lease stated that David Whitaker owned the subject property as a single man. Rossi testified that the Mobley lease reinforced his belief that David Whitaker owned the subject property as a single man because a landman for Mobley had performed a title search in 2005 and concluded that David Whitaker had purchased the subject property as a single man and could therefore lease it as a single man. Plaintiff's expert, Philip Asprodites, testified that to render a title opinion a landman only looks to the public records on the applicable property; there is no reason to look at the records regarding other property. Further, Defendants' title examiner, Matthew McEachem, admitted that it is important for a landman to rely on an appearance clause that states the status of a party. Therefore, nothing in this chain of title would suggest to a title examiner that David Whitaker did not own the subject property as a single man.

Jay Rossi also testified that he knew David Whitaker had been married at some point because Whitaker told him his wife had recently passed away. With this knowledge, Rossi checked outside the chain of title by looking up the Judgment of Possession on Dessie Whitaker's estate to ensure the subject property was not community property. Upon finding the Judgment of Possession in the De Soto Parish records, Rossi noticed that the subject property was not listed as a part of Dessie Whitaker's estate, which further confirmed that the property was owned by David Whitaker as a

single man.

Defendants insist that there was adequate information in the public records (e.g. federal tax liens on David and Dessie Whitaker; the Judgment of Possession showed David and Dessie Whitaker had nine grown children) that should have alerted Land Endeavors and Chesapeake that David Whitaker was married and not a single man when he acquired the subject property. That information, though, was either not specific to the subject property or not a clear indication that David Whitaker did not own the subject property as a single man. Further, the Judgment of Possession clearly noted that the subject property was not part of Dessie Whitaker's estate. As Mr. Asprodites stated, "I have a hard time finding bad faith when a landman makes the effort to confirm that this property is not community and it's a judgment of possession that specified it's not part of the estate." [264:17-20]. Accordingly, a title examiner should be able to rely on the combination of the Judgment of Possession and David Whitaker's repeated assertions that he was acquiring or leasing the property as a single man. To require title examiners to delve into any potential lead that would suggest a person was married when he acquired property as a single man would transform the role of a title examiner into that of a private investigator. Nothing in the public records on the subject property suggests Land Endeavors and Chesapeake were not in good faith.

Third, the 2008 Land Endeavors lease includes a non-warranty clause, which states: "Lessor does not warrant the title to said land even as to a return of bonus paid... Lessee shall have the right to purchase a lease or leases from others to protect its leasehold rights and shall not thereby be held to have disputed Lessor's title." [PE 12 at ¶5]. HTP suggests this lease provision casts doubt on whether Chesapeake could be in good faith when acquiring the 2008 lease. Louisiana courts have suggested that purchasing property without warranty of title could put a purchaser "on guard that there

10

existed a deficiency in title." *Board of Commissioners of the Port of New Orleans v. Delacroix Corp.*, 274 So.2d 745, 747-48 (La. App. 4th Cir. 1973) (quoting *Knight v. Berwick Lumber Co.*, 130 La. 240, 57 So. 900 (1912)). But in *Board of Commissioners* and *Knight*, the Court noted that, considering the non-warranty provision, "in the absence of an investigation to assess the title, the purchaser acted at its own risk and peril." *Id.* While the non-warranty provision in the 2008 lease may, as HTP asserts, suggest that Land Endeavors and Chesapeake should have known that there was a chance David Whitaker did not own the subject property as a single man and thus cannot be in good faith, Louisiana jurisprudence states that such a conclusion can only be drawn if there was no investigation to assess the validity of the seller's title. Here, both Land Endeavors and Chesapeake ran the title to the subject property, and nothing in the De Soto Parish public records related to the subject property would have shown that David Whitaker did not own the property as a single man. Furthermore, Chesapeake's expert testified that he did not think the non-warranty provision in the lease constituted bad faith since all leases have them. Therefore, while a non-warranty provision in a lease may be a warning to a third party that the title may have some deficiencies, the third party can make a reasonable title search to ensure title is as stated. Here, the non-warranty provision alone is not enough to suggest bad faith since Chesapeake and Land Endeavors both searched the public records to determine if any title defects existed.

Finally, no evidence presented at trial suggests Land Endeavors or Chesapeake had actual knowledge that David Whitaker did not own the subject property as a single man. Under the totality of these circumstances, it is the conclusion of this Court that Land Endeavors and Chesapeake both acquired their interest in the subject property in good faith.

**3 – Consequently, Chesapeake's claim for declaratory judgment is granted, and HTP's**

**counterclaim for declaratory judgment is denied. It is the order of this Court that the 2008 lease between Land Endeavors and David Whitaker, as transferred to Chesapeake, is the valid lease controlling the subject property.**

**4 – The conduct of HTP and the Whitaker heirs does not rise to the level of fraud.**

In Louisiana, fraud is "a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code Art. 1953. To constitute a tort of fraud, as opposed to just a vice of consent, a plaintiff must prove the defendant had an intent to defraud and that the plaintiff suffered actual or potential loss or damage. *Preis, Kraft & Roy v. Dallas Fire Ins. Co.*, 2006 WL 1793649 at *4 (W.D. La. June 15, 2006) (citing *St. Paul Mercury Ins. Co v. Williamson*, 224 F.3d 425, 438 (5th Cir. 2000)). Chesapeake contends that it has proven each element of fraud against HTP, thus it should recover its attorney's fees as the damage from HTP's fraud.

To succeed on its claim of fraud, Chesapeake must show HTP and the Whitaker heirs misrepresented or suppressed the truth. Chesapeake alleges HTP and the Whitaker heirs made two misrepresentations. One, Chesapeake argues the filing of the Amended Judgment of Possession for Dessie Whitaker's estate in the Caddo Parish records misreprented the community property nature of the subject property with respect to Chesapeake because of the presumption created by La. R.S. 35:11. Two, the filing of an amended detailed descriptive list for Dessie Whitaker's estate titled "juj of poss" in the DeSoto Parish conveyance records misrepresented the truth because no amended judgment of possession was filed in DeSoto Parish. Chesapeake has failed to carry its burden of proof

on both alleged misrepresentations.[5] Therefore, Chesapeake is not entitled to attorney's fees as damages for fraud.

### 5 – Chesapeake is not entitled to attorney's fees pursuant to Louisiana Revised Statutes 31:206-207.

Chespeake also avers that it is entitled to attorney's fees pursuant to La. R.S. 31:206. Article 206 of the Louisiana Mineral Code states:

> A. Except as provided in Paragraph B of this Article, when a mineral right is extinguished by the accrual of liberative prescription, expiration of its term, or otherwise, the former owner shall, within thirty days after written demand by the person in whose favor the right has been extinguished or terminated, furnish him with a recordable act evidencing the extinction or expiration of the right.
>
> B. When a mineral lease is extinguished prior to the expiration of its primary term, the former lessee shall, within ninety days after the extinguishment, record an act evidencing the extinction or expiration of the lease in the official records of all parishes wherein the lease is recorded.

La R.S. 31:207 provides:

> If the former owner of the extinguished or expired mineral right fails to furnish the required act within thirty days of receipt of the demand or if the former lessee of a mineral lease fails to record the required act within ninety days of its extinguishment prior to the expiration of its primary term, he is liable to the person in whose favor the right or the lease has been extinguished or expired for all damages resulting therefrom and for a reasonable attorney's fee incurred in bringing suit.

Neither Article 206 nor Article 207 of the Louisiana Mineral Code applies in this case because the HTP lease was not extinguished or expired. HTP notes:

---

[5] While the alleged misrepresentations Chesapeake draws this Court's attention to only involve action by Whitaker or his attorney, Alex Washington, Chesapeake avers that HTP is liable as a co-conspirator. Because this Court finds that Chesapeake has not carried its burden of proof with respect to these alleged misrepresentations, it does not consider HTP's potential liability as a co-conspirator.

> The issue in this case was whether the Land Endeavors lease was valid or not. The issue was not whether the HTP lease had been extinguished or terminated. Since the Land Endeavors lease was found to be valid, it matters not whether the HTP lease is valid or not. The HTP lease is simply, as argued by Chesapeake, primed by the Land Endeavors lease which was recorded first.

[Doc. #71 at 11-12]. HTP is correct. This Court does not hold the HTP lease extinguished or terminated because of the expiration of its term, failure to meet the conditions of the lease, the accrual of liberative prescription, or a similar reason by which a lease terminates. Instead, this Court holds that Chesapeake's lease, pursuant to R.S. 35:11, is the controlling lease of the subject property. Accordingly, the Louisiana Mineral Code does not provide Chesapeake an avenue for recovering its attorney's fees.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE